UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THULIO FELISBERTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 19-12062-JGD |
| DAVID DUMDEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OF DECISION AND ORDER
# ON PLAINTIFF'S MOTION TO COMPEL DOCUMENTS
# <u>IDENTIFIED ON DANA TRANSPORT, INC.'S PRIVILEGE LOG</u>

May 27, 2021

DEIN, U.S.M.J.

## I.     INTRODUCTION

This case arises out of an incident that occurred on January 17, 2019 when the plaintiff, Thulio Felisberto ("Felisberto"), sustained severe injuries while transferring liquid aircraft deicer from a tank trailer owned by defendant, Dana Transport, Inc. ("Dana Transport"), into a railroad car at his employer's rail yard in North Grafton, Massachusetts.  The plaintiff claims that he was on top of the tank trailer adjusting the flow of the deicer when a nearby metal clean out cap flew off the vehicle and struck him in head, fracturing his skull and parts of his face.  Felisberto brought this action in state court on May 10, 2019, and on October 4, 2019, the matter was removed to this court on the basis of diversity jurisdiction.  By his Second Amended Complaint,

Felisberto has asserted claims for negligence against the defendants.[1]

The matter is before the court on the "Plaintiff's Motion to Compel Documents Identified on Defendant Dana Transport, Inc.'s Privilege Log" (Docket No. 37), by which Felisberto is seeking an order compelling Dana Transport to produce documents withheld from production pursuant to the work product doctrine and the attorney client privilege. Dana Transport has designated 19 of those documents as work product and listed them on a "Supplemental Privilege Log of Defendants Dana Transport, Inc. and David Dumdey."[2] The remaining documents, which Dana Transport has withheld on the grounds of attorney client privilege, are described broadly in a footnote to the Supplemental Privilege Log, but are not specifically listed or otherwise identified. Following a hearing on the plaintiff's motion, this court ordered the parties to confer and attempt to reach an agreement on a format for identifying the attorney client privileged documents on a written privilege log, and to notify the court by April 16, 2021 if they were unable to resolve their dispute with respect to those documents. This court also instructed Dana Transport to submit copies of the 19 documents listed on its Supplemental Privilege Log to the court for an *in camera* review to determine whether those documents must be produced in response to the plaintiff's discovery requests or whether the defendant may continue to withhold them pursuant to the work product doctrine. The plaintiff's motion has remained under advisement pending this court's *in camera* review

---

[1] The defendants include Dana Transport, its employee, David Dumdey, Cryotech Deicing Technology and Jarchem Industries, Inc. A fifth defendant, Chem-Wash, was dismissed voluntarily on March 12, 2021. (Docket No. 52).

[2] A copy of the Supplemental Privilege Log is attached as Exhibit 1 to Defendant Dana Transport, Inc.'s Opposition to Plaintiff's Motion to Compel Discovery (Docket No. 57).

and the parties' effort to resolve any differences regarding the documents over which Dana Transport is claiming attorney client privilege. It appears there is no longer a dispute with respect to the documents withheld on the grounds of the attorney client privilege. Therefore, this Memorandum of Decision and Order addresses only the 19 documents that have been withheld as work product.

Based on this court's review of the challenged documents, and for the reasons detailed below, Felisberto's motion to compel is ALLOWED IN PART and DENIED IN PART. Specifically, the motion is denied with respect to Documents Nos. 2-5 and 15-17 listed on Dana Transport's Supplemental Privilege Log, and with respect to the emails between Gene Patten and Michael Polselli dated February 5, 2019, May 30, 2019 and June 17, 2019, which are included as part of Document No. 19. However, the plaintiff's motion to compel is allowed with respect to the remaining materials listed in the Supplemental Privilege Log.

## II. DISCUSSION

### A. The Work Product Doctrine

Generally, in diversity cases such as this one, where no federal question is presented, "state law will govern the application of a privilege." S.D. Warren Co. v. Eastern Elec. Corp., 201 F.R.D. 280, 282 (D. Me. 2001). "However, federal courts apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question." Id. and cases cited. See also Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 11 (D. Mass. 1997) ("The work product doctrine ... is a federal right derived from the Federal Rules of Civil Procedure and therefore resolved according to federal law" (quotations and citations omitted)). Accordingly, the question whether the documents on the defendant's Supplemental Privilege

Log may be withheld as work product is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure.  See U.S. v. Textron Inc. & Subsidiaries, 577 F.3d 21, 25 (1st Cir. 2009) ("Textron") (en banc) (explaining that the work product privilege "is now embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure.").  Under that Rule, "[d]ocuments and tangible things prepared by or for a party or its representative, in preparation for trial or in anticipation of litigation, are not discoverable absent a showing of substantial need, undue hardship, and inability to obtain their substantial equivalent by other means."  Le v. Diligence, Inc., 312 F.R.D. 245, 247 (D. Mass. 2015) (citing Fed. R. Civ. P. 26(b)(3)).

Felisberto argues that the documents in question must be produced because Dana Transport has failed to establish that they were prepared in anticipation of litigation.  (Pl. Mem (Docket No. 38) at 7-11).  As in the case of other privileges, "[t]he party seeking work product protection has the burden of establishing its applicability."  In re Grand Jury Subpoena, 220 F.R.D. 130, 140 (D. Mass. 2004).  Consequently, Dana Transport has the burden of showing that the documents listed in the Supplemental Privilege Log were "prepared in anticipation of litigation or for trial[.]"  Fed. R. Civ. P. 26(b)(3)(A).

The First Circuit has taken a relatively narrow view of this element of the work product doctrine.  In State of Maine v. U.S. Dep't of the Interior, 298 F.3d 60 (1st Cir. 2002), the First Circuit, in interpreting the phrase "in anticipation of litigation" adopted the standard applied by a number of other circuits holding that documents serving both a business purpose and a litigation purpose may be protected as work product only "if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because* of the prospect of litigation.'"  Maine, 298 F.3d at 68

(emphasis in original) (quoting United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998)). The First Circuit explained that under this test, no protection would attach to "'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation[,]'" even if the documents would "aid in the preparation of litigation." Id. at 70 (quoting Adlman, 134 F.3d at 1202).

Subsequently, in an *en banc* decision, the First Circuit elaborated on this aspect of the work product doctrine, explaining that "the focus of work product protection has been on materials prepared for use in litigation, whether the litigation was underway or merely anticipated." Textron, 577 F.3d at 29. As the First Circuit emphasized in that case, "[t]he phrase used in the codified rule – 'prepared in anticipation of litigation or for trial' did not, in the reference to anticipation, mean prepared for some purpose other than litigation: it meant only that the work might be done *for* litigation but *in advance of* its institution." Id. Thus, as the First Circuit further explained:

> It is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated. Rather, as the Supreme Court explained, "the literal language of [Rule 26(b)(3)] protects materials *prepared for* any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *Federal Trade Commission v. Grolier Inc.*, 462 U.S. 19, 25, 103 S. Ct. 2209, 76 L. Ed. 2d 387 (1983) (emphasis added). This distinction is well established in the case law. *See, e.g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975).
>
> Nor is it enough that the materials were prepared by lawyers or represent legal thinking. Much corporate material prepared in law offices or reviewed by lawyers falls in that vast category. It is only work done in anticipation of or for trial that is protected. Even if prepared by lawyers and reflecting legal thinking, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Fed. R. Civ. P. 26 advisory committee's note (1970). *Accord Hickman v. Taylor*, 329 U.S. [495, 510 n.9, 67 S. Ct. 385, 393 n.9, 91 L. Ed. 451 (1947)] (quoting English precedent that

[5]

"[r]eports ... if made in the ordinary course of routine, are not privileged"). Id. at 29-30 (footnote omitted).

In the instant case, Dana Transport argues that the documents at issue are entitled to protection because they are all dated after the incident in question, were created by Dana Transport employees or its insurer, and "were prepared in order to aid in possible future litigation, including related to communications with Defendant's insurer." (Def. Opp. Mem. (Docket No. 57) at 9-10 (footnote omitted)). However, the fact that the documents were created after Felisberto's accident says nothing about the purpose for which they were created and is insufficient to establish that they were prepared in anticipation of litigation. Nor is it sufficient that the documents would aid in possible future litigation. See Maine, 298 F.3d at 70 (explaining that documents "prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected "even if [they] aid in the preparation of litigation." (internal quotations and citations omitted)). Additionally, "[c]overage investigations by insurance companies are not *per se* conducted in anticipation of litigation, and a determination as to whether documents generated during such investigations were prepared in anticipation of litigation, as opposed to in the ordinary course of business, should be made on a case-by-case basis." Amica Mut. Ins. Co. v. W.C. Bradley Co., 217 F.R.D. 79, 83 (D. Mass. 2003). Accordingly, in determining whether communications between Dana Transport and its insurer constitute protected work product, this court will consider "the nature of the document[s]" in light of the factual circumstances of the case to determine if they "can be fairly said to have been prepared or obtained *because of* the prospect

of litigation."[3]  Id. (quoting Maine, 298 F.3d at 68) (additional quotations and citation omitted).

Felisberto contends that even if Dana Transport is able to make the requisite showing with respect to some or all of the documents, he should still be able to obtain any documents that shed light on "the condition of the tank trailer, and all of its component parts immediately after he was injured" because that information is critical to his case and is not available from an alternative source.  (Pl. Reply Mem. (Docket No. 64) at 5).  "Work-product protection is not an absolute privilege."  Certain London Mkt. Co. Reinsurers v. Lamorak Ins. Co., No. 18-10534-NMG, 2020 WL 6048345, at *4 (D. Mass. Oct. 13, 2020) (slip op.).  "The protection can be overcome if the party seeking discovery demonstrates 'substantial need of the materials' and cannot obtain the 'substantial equivalent' by other means without undue hardship."  Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17-18 (1st Cir. 2012) (citation omitted).  See also Fed. R. Civ. P. 26(b)(3)(A)(ii).  However, "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

---

[3] On the date of the hearing on the plaintiff's motion to compel, Dana Transport filed an Affidavit from its Vice President of Safety and Compliance, Gene Patten, in which Mr. Patten stated that "[a]ny documents, communications and investigation drafted or conducted after the incident at issue in this case (January 17, 2019) concerning the incident were drafted or conducted in anticipation of litigation[,]" and noted that some of his communications were with an attorney for the defendant's insurer.  (Docket No. 66).  Additionally, Mr. Patten stated that he "anticipated there would be a lawsuit and a workers compensation claim resulting from the incident" that resulted in Felisberto's injuries based on certain circumstances surrounding the incident.  (Id.).  For the reasons described above, the fact that the documents at issue were created after Felisberto's accident, and that some of them reflect communications between the defendant and counsel for its insurer, are insufficient to establish that the work product doctrine applies.  Similarly, "the fact that [Dana Transport was] concerned that [Felisberto] might bring litigation sometime in the future is not sufficient to qualify for attorney work product protection."  United States ex rel. Wollman v. Mass. Gen. Hosp., Inc., 475 F. Supp. 3d 45, 61 (D. Mass. 2020).  Accordingly, Mr. Patten's Affidavit does not eliminate the need for this court to conduct an *in camera* review of the documents to determine whether they meet the legal standards necessary for the work product protection to apply.

B. **Application of the Work Product Doctrine to the Documents at Issue**

Dana Transport has listed the documents withheld on the grounds of work product protection as number 1 through 19 on its Supplemental Privilege Log. Taking the documents in chronological order and applying the principles set forth above, the court rules as follows.

Document Nos. 1 and 18[4]: Document Nos. 1 and 18 are copies of a June 4, 2019 letter from a Liability Adjuster at Dana Transport's insurer, Great West Casualty Company ("GWCC"), to Liquid Transport Corp. It refers to an investigation made in what appears to be the ordinary course GWCC's business of investigating a claim for insurance coverage and contains no references to litigation. Therefore, Dana Transport has not shown that the document was made in anticipation of litigation and should be protected as work product. See Amica Mut. Ins. Co., 217 F.R.D. at 83 (ruling that documents relating to an investigation "undertaken for the purpose of assessing coverage for the loss" did not constitute work product). See also Certain London Mkt. Co. Reinsurers, 2020 WL 6048345, at *5 ("It is undisputed that in insurance cases, communications with an attorney are not protected under the ... work-product doctrine, where the attorney performs the role of a claims adjuster and does not provide legal advice.").

Documents Nos. 2, 3 and 4: The next three documents consist of email communications dated February 5, 2019 between Gene Patten, Dana Transport's Vice President of Safety and Compliance, and a subrogation attorney at GWCC. Although the documents were created before Feliberto filed the instant lawsuit in state court, the communications contained therein both contemplate litigation and reflect preparation for litigation. Therefore, this court finds

---

[4] In connection with its submission of the documents to the court for an *in camera* review, Dana Transport explained that documents 1 and 18 are duplicates, and that document 18 is dated 06/04/2019 instead of 06/09/2019 as shown on the Supplemental Privilege Log.

that they "can be fairly said to have been prepared or obtained *because of* the prospect of litigation" and are entitled to protection as work product.  Maine, 298 F.3d at 68 (quoting Adlman, 134 F.3d at 1202).

As described above, Felisberto argues that he should be entitled to discovery of any documents that discuss or describe the condition of the tank trailer or the clean out caps at the time he was injured because such information is "critical to Plaintiff's case and cannot be discovered from any other source." (Pl. Reply Mem. at 5).  In particular, he argues that it is likely the tank trailer has been repaired and its parts have been replaced since his accident in January 2019, thereby rendering "any documents that describe the condition of the tank trailer and cleanout caps" at the time of his accident "the only source of this information." (Id.). Based on this court's review of the documents at issue, this court concludes that to the extent Document Nos. 2, 3 and 4 contain references to the condition of that equipment, Felisberto can easily obtain the "substantial equivalent" of the information in those particular documents from non-privileged documents describing or depicting the tank trailer in the period immediately following the accident, as well as from depositions of Dana Transport's safety personnel.  See Fed. R. Civ. P. 26(b)(3)(A)(ii) (to overcome work product protection, party must show a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.").  Therefore, he cannot overcome the work product protection with respect to these documents.

Document No. 5:  Document No. 5 is a copy of one of the email communications included as part of Document Nos. 2, 3 and 4.  Dana Transport may continue to withhold it from production for the reasons described above.

<u>Document No. 6</u>:  Document No. 6 consists of a report and accompanying documents that Dana Transport prepared at the direction of the Occupational Safety and Health Administration ("OSHA") in order to "ensure the safety of [the company's] workers and avoid the need for an OSHA inspection."  Dana Transport has informed the court that it has produced these documents to plaintiff's counsel.  Nevertheless, to avoid the possibility of any future confusion, this court confirms that the material is not protected by the work product privilege.  As stated in the documents themselves, the report and accompanying documents were prepared and assembled at OSHA's request for the nonlitigation purpose of ensuring worker safety through an "investigation to determine the reasons for the [plaintiff's] work related incident, to identify hazards related to the incident and to implement corrective actions."  They also enabled Dana Transport to avoid an on-site OSHA inspection.  Even if the documents could prove helpful to the defendants in the context of this case, there can be no question that they were created "irrespective of the litigation."  <u>Maine</u>, 298 F.3d at 70 (quoting <u>Adlman</u>, 134 F.3d at 1202).  Therefore, they do not fall within the scope of the work product protection.

<u>Document No. 7</u>:  This document, which was authored by a Dana Transport employee identified on the Supplemental Privilege Log as Mr. Cragg, consists of typewritten notes of an investigation regarding the circumstances surrounding Felisberto's injury.  It describes Mr. Cragg's inspection of the tank trailer involved in the accident, an interview of the tank trailer driver, David Dumdey, and interviews with the plaintiff's co-workers at the Dana rail yard.  The notes indicate that Dana Transport performed the investigation in an effort to determine the facts surrounding the incident and assess what steps needed to be taken to ensure worker safety going forward.  Accordingly, they appear to have been prepared in the usual course of

business unrelated to litigation. Dana Transport has not met its burden of establishing that Document No. 7 constitutes work product.

Even if this court were to assume that the documents contained in Document No. 7 qualify as work product, Felisberto would be entitled to their production. Document No. 7 includes descriptions of the tank trailer and clean out cap in the days and weeks surrounding the incident at issue, as well as descriptions of the circumstances surrounding the accident from individuals with first hand knowledge of events. "Such statements are unique in that they provide a contemporaneous impression of the facts." City of Springfield v. Rexnord Corp., 196 F.R.D. 7, 10 (D. Mass. 2000). Consequently, Felisberto cannot obtain the same information from an alternative source. Moreover, as Felisberto argues, the condition of the vehicle and the clean out caps at the time of the incident is critical to his case. (See Pl. Reply Mem. at 5). Without such information, he will not be able to establish the cause of the accident or prove his claims of negligence. Given the passage of time since the January 2019 accident, it would be "practically impossible" to obtain the substantial equivalent of the documents "without undue hardship" at this stage in the litigation. See id. Therefore, this court finds that these documents, even if arguably deemed work product, would fall within the exception to the privilege and must be produced.

Document Nos. 8, 9 and 13[5]: Documents 8, 9 and 13 consist of communications between Felisberto's stepfather, Eduardo Ribeiro, and a worker's compensation adjuster at GWCC, as well as a communication between the insurance adjuster and Dana Transport's Vice

---

[5] Document Nos. 9 and 13 are duplicates.

President of Safety and Compliance, Mr. Patten.  There is nothing in the documents to suggest that they were created because of or for use in litigation.  Rather, the documents show that Mr. Ribeiro was seeking information about the cause of the plaintiff's accident, and was hoping to obtain that information from the adjuster handling Felisberto's worker's compensation claim.  The worker's compensation adjuster responded to Mr. Ribeiro, explaining that she was unable to answer his questions because she was not involved in the investigation into the accident and suggesting whom he might contact.  She also communicated with Mr. Patten about Mr. Ribeiro's request.  Because Dana Transport has not met its burden of showing that these communications were prepared in anticipation of litigation, the plaintiff's motion to compel is allowed with respect to Document Nos. 8, 9 and 13.

Document Nos. 10 and 14[6]: Document Nos. 10 and 14 are copies of the email communication from Felisberto's stepfather to Dana Transport's worker's compensation adjuster at GWCC.  They do not constitute work product for the reasons described above with respect to Document Nos. 8, 9 and 13, and because they were not prepared by Dana Transport or its representative.  See Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents ... that are prepared in anticipation of litigation or for trial *by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)*." (emphasis added)).  Therefore, they may not be withheld from production.

Document No. 11: Document No. 11 consists of photographs of the tank trailer that were taken by Dana Transport after the plaintiff's accident.  They include two photographs that are identical or nearly identical to photographs that are included in the OSHA report contained

---

[6] Document Nos. 10 and 14 are duplicates.

[12]

in Document No. 6.  Accordingly, they appear to have been taken as part of the investigation that Dana Transport completed at OSHA's request and not for any purpose relating to litigation. In any event, Dana Transport has not submitted any evidence to support its claim that the photographs were taken because of or for use in litigation.  Therefore, this court finds that they are not protected work product.

This court further finds that the photographs, even if considered work product, would fall within the exception to the work product protection.  "Courts have generally allowed discovery of photographs and diagrams which were made at the time of an accident because of the inherent inability of a party to reproduce these materials … Photographs which are taken at the scene long after the occurrence of the accident may not be the substantial equivalent of photographs which were taken at an earlier date." Le, 312 F.R.D. at 247 (quoting Reedy v. Lull Eng'g Co., 137 F.R.D. 405, 407 (M.D. Fla 1991)).  This is especially true in this case where the accident involved a vehicle that has almost certainly been serviced, washed, repaired and otherwise altered since the incident at issue occurred more than two years ago.  For these reasons, as well as the importance of such evidence to the plaintiff's case, Felisberto has established a substantial need for the photographs and no means of obtaining equivalent images without undue hardship.

Document No. 12: Document No. 12 consists of a portion of the email response from Dana Transport's worker's compensation adjuster at GWCC to Felisberto's stepfather, Mr. Ribeiro, which is described above in this court's ruling regarding Document Nos. 8, 9 and 13. For the reasons stated previously, the communication does not fall within the scope of the work product doctrine.  Document No. 12 also contains an email reply to the adjuster's

response from Mr. Ribeiro.  This email was not prepared by Dana Transport or its representative and is unrelated to litigation.  Accordingly, it may not be withheld on the grounds of the work product privilege.

Document Nos. 15, 16 and 17: Documents Nos. 15, 16 and 17 consist of email communications between Mr. Patten at Dana Transport and a subrogation attorney at GWCC.  They include discussion regarding litigation strategy and it is apparent from the documents that they were created because of the lawsuit.  Therefore, this court finds that they qualify for work product protection.  Because the documents do not describe, discuss or depict the condition of the tank trailer or clean out caps, and are not necessary for the plaintiff to litigate his claims, they do not fall within the exception to the work product doctrine.  Accordingly, the plaintiff's motion to compel is denied with respect to Document Nos. 15, 16 and 17.

Document No. 19: Document No. 19 consists of a collection of email communications between Dana Transport employees, emails between Mr. Patten and the worker's compensation adjuster at GWCC, emails between the insurance adjuster and a nurse working on the plaintiff's file, a copy of the typewritten notes from Mr. Cragg's investigation of the January 17, 2019 incident and copies of communications between OSHA and the defendant.  This court finds that two of these documents fall within the scope of the work product doctrine.  The first document is an email communication between Mr. Patten and Michael Polselli dated February 5, 2019.  It both contemplates future litigation and discusses preparation for such litigation, and would not have been created without the prospect of litigation.  Similarly, the document containing two emails between Mr. Patten and Mr. Polselli dated June 17, 2019 and one email from Mr. Patten to Mr. Polselli dated May 30, 2019 relates directly to the litigation

and addresses litigation strategy. Accordingly, this court finds that those documents are protected. Because the February 5, 2019 email and the document containing the June 17, 2019 and May 30, 2019 email communications between Mr. Patten and Mr. Polselli contain no discussions or descriptions regarding the condition of the tank trailer or the clean out caps, or even discuss the circumstances surrounding the plaintiff's accident, Felisberto has not shown that he is entitled to their production notwithstanding their status as work product. Accordingly, the motion to compel is denied with respect to those communications.

The remaining documents included as part of Document No. 19 consist of communications and materials that appear to have been created in the ordinary course of Dana Transport's or its insurance adjuster's business and/or would have been made regardless of the prospect of litigation. Because Dana Transport has not shown that they are entitled to be withheld as work product, the plaintiff's motion is allowed with respect to those documents.

### III.    ORDER

For all the reasons described above, the "Plaintiff's Motion to Compel Documents Identified on Defendant Dana Transport, Inc.'s Privilege Log" (Docket No. 37) is ALLOWED IN PART and DENIED IN PART. Specifically, the motion is denied with respect to Documents Nos. 2-5 and 15-17 listed on Dana Transport's Supplemental Privilege Log, and with respect to the emails between Gene Patten and Michael Polselli dated February 5, 2019, May 30, 2019 and June 17, 2019, which are included as part of Document No. 19. The motion is allowed with respect to the remaining documents listed on Dana Transport's Supplemental Privilege Log.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge